UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBIN L. ENGLAND, )
 )
　　　　Plaintiff, )
 )　　No. 1:12-cv-17
v. )
 )　　*Collier / Lee*
COMMISSIONER OF SOCIAL SECURITY, )
 )
　　　　Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Robin England brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 16, 18]. Plaintiff alleges the Administrative Law Judge ("ALJ") improperly favored the opinion of a state agency consultant over the opinion of a psychological examiner. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 16] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

**I.　　ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed her application for DIB on July 15, 2010, alleging disability as of November 25, 2009 (Transcript ("Tr.") 96-99). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before the ALJ (Tr. 44-49, 52-57). The ALJ held a hearing on August 12, 2011, during which Plaintiff was represented by an attorney (Tr. 23-43). The

1

ALJ issued his decision on October 4, 2011 and determined Plaintiff was not disabled because there were jobs that existed in significant numbers in the economy that she could perform (Tr. 6-18). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-5). Plaintiff filed the instant action on January 21, 2012 [Doc. 2].

## II.  FACTUAL BACKGROUND

### A.  Education and Background

Plaintiff was 46 at the time of the hearing and had left school in the ninth grade (Tr. 26). She had previously worked as a toe seamer for about two years and sock nester for approximately 11 years (Tr. 26-27). Plaintiff had not worked after her alleged onset date and the ALJ noted a prior application, which was denied before the onset date, would not be reopened (Tr. 27-28). Plaintiff testified she was disabled because she still had problems with the use of her hands due to intermittent pain and tingling that radiated up her arms (Tr. 29-30). These problems intensified the more she used her hands, particularly with activities like mopping, picking up heavy objects, and using a fork to eat, and her right hand was worse (Tr. 29-30). Plaintiff could button clothes but usually tried to avoid buttoning clothes and tying shoes (Tr. 30-31). Plaintiff testified that she used to have a cell phone that she used to text, but did not anymore (Tr. 31). Plaintiff testified she could write, but the pain and tingling would start if she wrote for any length of time (Tr. 31). Plaintiff could sweep for five to 10 minutes before experiencing pain and tingling and could use a fork for about 10 minutes (Tr. 32). Plaintiff testified she could not pick up heavy items and had problems raising her arm to brush her teeth (Tr. 32). Plaintiff would rest her hands for a few minutes before continuing these tasks (Tr. 32-33).

2

Plaintiff testified she had been depressed off and on for quite a while and did not want to get up and leave her bedroom; she cried all the time, slept two or three hours a night, and sometimes had no appetite (Tr. 33-34). Plaintiff's husband did all the housework, and Plaintiff would sometimes make the bed, but sometimes did not care (Tr. 34). Plaintiff only left the house with her husband or her mother and they would take her to the store or to doctor's appointments (Tr. 34-35). Plaintiff testified she had a driver's license but did not drive because she would get nervous, and she did not have people coming to see her besides her husband or mother because she didn't like to be around people (Tr. 35). Plaintiff was asked about her daily activities and described waking up at 7:00 or 7:30 a.m., getting back into bed shortly thereafter for a couple hours, then getting up and walking through the house, and sitting on the front porch crying; otherwise, she just sat in the house (Tr. 35-36). She did not like watching TV or reading because it made her nervous, and she avoided phone calls from family and friends (Tr. 36). Plaintiff had last attended church over a month ago (Tr. 36). Plaintiff testified she did not have any problems sitting and walked around her house and yard frequently, but she could no longer do yard work due to problems with her hands (Tr. 37).

### B. Vocational Expert Testimony

During the hearing, the ALJ solicited the testimony of vocational expert Jo Ann Bullard ("VE") (Tr. 37-38). The ALJ asked the VE to assume an individual who could do light work without repetitive grasping, gross fine manipulative activity, or vibrations, and the individual was further limited to simple one, two, three step tasks and could only have superficial social interactions with coworkers, supervisors and the public in a stable work environment with infrequent work changes (Tr. 38). The VE testified such an individual could work as housekeeping cleaner, with 7,600 jobs in Tennessee and 371,000 in the nation; a laundry folder, with 3,100 in Tennessee and
3

85,800 nationally; and a textile checker, with 1,050 jobs in Tennessee and 127,000 nationally (Tr. 38). If the individual could only do sedentary work with the same restrictions, the following jobs were available: surveillance system operator monitor, with 196 jobs in Tennessee and 16,500 nationally; table worker fabrication, with 350 jobs regionally and 13,000 in the nation; and hand bender, with 350 jobs in Tennessee and 14,000 nationally (Tr. 39).

The VE testified that most sedentary jobs required frequent use of the hands, and if an individual could not use their hands more than occasionally, there were only two jobs that might be available (Tr. 40). There would still be a significant reduction in such jobs at the light work level (Tr. 40). In response to further questions posed by Plaintiff's counsel, the VE testified there would be no jobs available if an individual would not be able to interact appropriately with the public, coworkers, or supervisors for two-thirds of the day, and would also be unable to respond appropriately to usual work situations and changes in a routine work setting (Tr. 42). The VE further testified that three of those limitations would preclude employment on its own (Tr. 42).

### C. Medical Records[1]

On July 29, 2010, Plaintiff had an appointment with Cherokee Medical Group and wanted to go back on medication for depression (Tr. 231). On September 20, 2010, Plaintiff submitted to a psychological evaluation with Ann Ramey, M.S., whose report was countersigned by Dr. Jeffrey Erickson (Tr. 239-44). Plaintiff reported being discharged from work for physical problems in 2008 and described increased symptoms of depression such as a lack of desire to get out of bed, clean her house, or do anything; she had crying spells daily, was angry, and had passive suicidal thoughts (Tr.

---

[1] Plaintiff only challenges the ALJ's decision as to her limitations stemming from depression; accordingly, only mental health records are summarized.

4

239-40). Plaintiff reported not caring about her life or her health, she dreaded seeing her grandchildren because she was so unhappy and did not want anyone at her home, and she experienced mood swings (Tr. 240). Plaintiff had had previous experiences with counseling but was still depressed; she had never been evaluated by a psychiatrist because she could not afford it and had instead been prescribed medication by her family physician (Tr. 240). Some of Plaintiff's family members had a history of mental health conditions (Tr. 240).

Plaintiff reported daily activities of smoking cigarettes, sending text messages, riding around with her husband when he encouraged her, although sometimes in her pajamas, taking a bath when someone made her or she had to go somewhere, and talking to her sister-in-law sometimes (Tr. 241). Her husband did the laundry, shopping, cooking, and yard work and was becoming angry at her for not wanting to do anything (Tr. 241). Plaintiff did not want to put on makeup or fix her hair and did not want to visit with her children and grandchildren (Tr. 241). Plaintiff had stopped attending church and gardening and had lost enjoyment in activities or working (Tr. 241).

Ms. Ramey observed Plaintiff appeared to be clean but stated she had not bathed for three days; she reported being very unhappy and Ms. Ramey observed she appeared to be severely depressed (Tr. 241). Ms. Ramey noted mild to moderate psychomotor retardation, but Plaintiff was cooperative, answered questions coherently, and put forth appropriate effort (Tr. 242). Plaintiff began crying during her mental status examination when she could not answer a question but then collected herself and answered math questions (Tr. 242). Ms. Ramey opined Plaintiff was functioning in the low average range, although her cognitive skills could be average and affected by depression (Tr. 242). Plaintiff exhibited significant depression, with no smiling or spontaneous social commenting, and her interests in activities or social contacts were significantly restricted (Tr.

5

242).

Plaintiff's husband confirmed Ms. Ramey's impression of severe depression and marked loss of ability to function on a daily basis (Tr. 243). Ms. Ramey diagnosed Plaintiff with major depressive disorder, recurrent, severe and assigned her a Global Assessment of Functioning ("GAF") score of 50[2] (Tr. 242). Ms. Ramey opined Plaintiff was not able to appropriately respond to a work situation or supervisors such that her social interactive patterns and persistence at tasks were significantly restricted; Plaintiff's ability to understand was not restricted, but her concentration, recall, and problem-solving skills were mildly restricted and her ability to adapt was mildly to moderately restricted (Tr. 243).

Ms. Ramey also filled out a medical source statement of Plaintiff's ability to do work related activities, which was also countersigned by Dr. Erickson (Tr. 245-47). In this form, Ms. Ramey opined more specifically that Plaintiff had marked limitations in the areas of carrying out complex instructions and making judgments on complex work-related decisions; she had moderate limitations in understanding and remembering complex instructions and mild limitations in making judgments on simple work-related decisions (Tr. 245). Ms. Ramey noted her severe depression seriously limited Plaintiff's ability to make and carry out executive decisions (Tr. 245). Ms. Ramey also opined Plaintiff was markedly limited in interacting appropriately with the public, supervisors, and coworkers, and responding appropriately to usual work situations and changes in the work setting; as justification, Ms. Ramey noted Plaintiff was observed to be severely angry and depressed and

---

[2] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

6

exhibited psychomotor retardation (Tr. 246).

Dr. Norma Calway-Fagen, a state agency consultant, initially opined there was insufficient evidence to evaluate Plaintiff on October 11, 2010 (Tr. 257-260). On November 1, 2010, Dr. Calway-Fagen filled out a psychiatric review technique form and a mental residual functional capacity assessment (Tr. 261-78). Dr. Calway-Fagen opined Plaintiff had moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace (Tr. 271). Dr. Calway-Fagen more specifically opined Plaintiff would be markedly limited in her abilities to understand, remember and carry out detailed instructions and was moderately limited in her abilities to maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, work in coordination or proximity with others without being distracted by them, make simple work related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently (Tr. 275-76).

Dr. Calway-Fagen noted Plaintiff's diagnosis of major depressive disorder and opined her allegations were partially credible, but the alleged intensity and severity of her condition was not entirely consistent with the record because Plaintiff reported panic attacks in a form but did not report them in her psychological evaluation; she also was only taking an anti-depressant, had not been hospitalized for treatment, and was not receiving consistent mental health treatment (Tr. 273). As such, Dr. Calway-Fagen opined the evidence supported moderate mental health limitations and opined Plaintiff could understand and remember one to three step tasks, concentrate and persist for

7

two hour periods in an eight hour day, interact superficially with the public, coworkers and supervisors, and adapt to limited change and set limited independent goals (Tr. 273, 277). Dr. Calway-Fagen's assessment was affirmed by Dr. George Davis on February 9, 2011 (Tr. 296).

Plaintiff had an initial assessment at Volunteer Behavioral Health on November 23, 2010 (Tr. 309-12). Plaintiff reported a diagnosis of depression and a depressed mood, problems sleeping, a poor appetite, low energy and no motivation (Tr. 309). Plaintiff also reported having mood swings, crying spells, inability to concentrate, and feelings of helplessness (Tr. 309). Plaintiff reported she stopped working because she had problems with her hands (Tr. 309). She had previously gone to two sessions for mental health treatment five years prior (Tr. 310). Plaintiff was diagnosed with major depressive disorder, recurrent, severe without psychotic features and her GAF was scored as 55 (Tr. 312). Plaintiff was to try a new medication and counseling was recommended (Tr. 312). Plaintiff failed to return to Volunteer Behavioral Health for follow up appointments in December 2010 and January 2011 (Tr. 305-07).

## III.   ALJ'S FINDINGS

### A.   Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and

8

Case 1:12-cv-00017-CLC-SKL   Document 20   Filed 12/21/12   Page 8 of 16   PageID #: 97

>meets the duration requirement, the claimant is disabled.
>
>4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
>5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**B.     ALJ's Application of the Sequential Evaluation Process**

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since November 25, 2009, the alleged onset date (Tr. 11). At step two, the ALJ found Plaintiff had severe impairments of status-post bilateral carpal tunnel release procedures, bilateral De Quervain's tendonitis and depression (Tr. 11). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 11). The ALJ noted that he specifically considered Listing 12.04 (Tr. 11-12). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work except she could not grasp repetitively, be exposed to vibrations, or engage in constant gross or fine manipulation, and was further limited to simple one to three step job tasks, only formal/superficial interaction with the public, coworkers, and supervisors, and infrequent work changes (Tr. 13). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 17). At step five, the ALJ found that Plaintiff was 44, a younger individual, on the alleged onset date and, after considering Plaintiff's

9

age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 17). This finding led to the ALJ's determination that Plaintiff was not under a disability as of November 25, 2009 (Tr. 18).

## IV. ANALYSIS

Plaintiff argues the ALJ failed to properly justify why the opinion of Dr. Calway-Fagen was entitled to greater weight than the opinion of Ms. Ramey, who conducted a psychological examination of Plaintiff and whose report was countersigned by Dr. Erickson.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without

10

interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B.    Dr. Calway-Fagen's Opinion and Ms. Ramey's Opinion

Plaintiff argues the ALJ did not provide adequate justification for his decision to favor Dr. Calway-Fagen's assessment over the opinion of Ms. Ramey [Doc. 17 at PageID# 68-70]. Specifically, Plaintiff contends the ALJ stated that Ms. Ramey's opinion was disfavored because she only saw Plaintiff once and did not administer any standardized testing, but Dr. Calway-Fagen never saw Plaintiff and thus also could not have performed standardized testing [*id.* at PageID# 70]. Plaintiff also challenges the ALJ's assertion that Plaintiff's credibility and Ms. Ramey's opinion were flawed because Plaintiff reported being socially withdrawn but still sent text messages, as Plaintiff argues that text messages do not require in person contact [*id.*]. Plaintiff further asserts the ALJ stated Plaintiff's lack of continuous mental health treatment was another reason for discounting

11

Ms. Ramey's opinion, but he did not provide any reasons for favoring Dr. Calway-Fagen's assessment [*id.* at PageID# 70-71]. According to Plaintiff, the distinction is crucial because Plaintiff would be disabled if Ms. Ramey's opinion were credited and was found to not be disabled with reliance on Dr. Calway-Fagen's opinion [*id.* at PageID# 71]. Plaintiff generally argues that objective testing is not available to verify her mental health conditions and that her failure to seek mental health treatment should not have been held against her, used to attack her credibility, or dispositive of her condition [*id.* at PageID# 71-72].

The Commissioner argues the ALJ properly weighed the opinions in the record and determined that Dr. Calway-Fagen's opinion was more consistent with other evidence in the record [Doc. 19 at PageID# 80-82]. The Commissioner notes the ALJ considered the fact that Plaintiff had not received mental health treatment before her evaluation with Ms. Ramey and did not seek consistent treatment afterwards [*id.* at PageID# 82]. The Commissioner further argues the ALJ incorporated some of Ms. Ramey's opinion by limiting her to simple tasks, infrequent work changes, and superficial interaction with the public, coworkers and supervisors [*id.*]. The Commissioner asserts Ms. Ramey's opinion was not entitled to any special weight as a one-time examiner of Plaintiff and recounted evidence in the record indicating Plaintiff had never been evaluated by a psychiatrist, had not sought treatment for depression and only received medication from her primary care physician, had an adequate mental status examination with both Ms. Ramey and at Volunteer Behavioral Health, and had received GAF scores of 50 and 55, indicating borderline moderate to severe impairments or moderate impairments [*id.* at PageID# 82-84]. The Commissioner argues there is substantial evidence, including the assessment by Dr. Calway-Fagen, to support the ALJ's discounting of the extreme limitations assigned by Ms. Ramey and to support his RFC determination

12

[*id.* at PageID# 84-85]. Finally, the Commissioner argues Plaintiff provided evidence that she could obtain mental health treatment if she thought it was necessary, and the ALJ did not penalize her for not seeking treatment, but noted that she generally sought medication from her primary care physician [*id.* at PageID# 86-87].

The ALJ stated as follows:

> I note a Global Assessment of Functioning (GAF) score of 50 per DSM criteria represents borderline "moderate to serious" mental symptomatology but at that point its usefulness ends in terms of evaluating the claimant's work restrictions. "Moderate-serious symptoms" sheds only the vaguest light on the claimant's ability to concentrate and persist at work tasks, the level of complexity at which she can work, or her capacity to adapt to changes, interact with others, or maintain long term, competitive employment. "GAFs" do not specifically exclude or include any of these abilities, but must be interpreted in light of the whole record. Therefore, I have considered the claimant's GAF scores as simply "one piece of the puzzle" in evaluating her residual functional capacity.
>
> Additionally, I note the claimant was only assessed by Ms. Ramey on one occasion. As such, Ms. Ramey made an opinion based upon limited contact with the claimant. I also note Ms. Ramey did not administer the MMPI or other standardized testing during the claimant's evaluation. I also note the claimant reported to Ms. Ramey that she suffered from severe withdrawal from people but also stated that she sent text messages. The claimant reported that she experienced depression for years but I note the claimant had not sought specialized mental health treatment prior to her consultative evaluation nor did she seek any consistent treatment after the evaluation. I find Ms. Ramey's assessment is inconsistent with the record and find the State agency consultant's opinion is more consistent with the record overall.
> . . .
> I note the claimant only sought mental health treatment on one occasion in November 2010 with Volunteer Behavioral Health Care but did not return there or seek treatment elsewhere. Additionally, I note the claimant has not been hospitalized for mental health impairments.

(Tr. 15-17).

13

This case presents a situation where Plaintiff has no treating physician opinion upon which to rely; instead, the two available opinions are those of a one-time psychological examiner and a state agency consultant who reviewed Plaintiff's file. Although Plaintiff frames her argument as though the ALJ pitted the opinion of Ms. Ramey against the opinion of Dr. Calway-Fagen, I **FIND** a more accurate characterization of the ALJ's decision is that he focused more specifically on what weight to afford Ms. Ramey's opinion because acceptance of that opinion in full would likely lead to a conclusion Plaintiff was disabled. As Ms. Ramey's opinion was the only piece of evidence in the record that would lead to such a finding, the ALJ had to analyze it in some detail regardless of his conclusion. As such, it would appear his statements that Ms. Ramey only saw Plaintiff one time and did not perform any standardized testing are not meant to be directly compared to Dr. Calway-Fagen's assessment. Dr. Calway-Fagen's opinion, on the other hand, did not include any limitations that would lead to a finding of disability and, pursuant to 20 C.F.R. § 404.1527(e)(2)(i), the ALJ was not bound by any findings in Dr. Calway-Fagen's opinion.

Nonetheless, the ALJ gave Dr. Calway-Fagen's opinion greater weight than Ms. Ramey's opinion because he determined Dr. Calway-Fagen's opinion was more consistent with the record, and I **FIND** no error in the ALJ's treatment of the two opinions. The ALJ was not required to give either opinion controlling weight, but he provided adequate reasons for discounting Ms. Ramey's opinion and the extreme limitations outlined therein. It was reasonable and accurate for the ALJ to note that Ms. Ramey only saw Plaintiff one time and did not conduct any testing, but rather focused on Plaintiff's history (as obtained from Plaintiff) and subjective complaints, because this would give Ms. Ramey very limited evidence from which to make her diagnoses and opinions. Furthermore, as the ALJ noted, the GAF score of 50 assigned to Plaintiff by Ms. Ramey is on the borderline of

14

moderate or serious issues and thus makes it difficult to ascertain where Plaintiff's abilities might fall. In addition, although Plaintiff takes issue with the ALJ's statements that she never had continuous mental health treatment either before or after the evaluation with Ms. Ramey, it was a reasonable factor to consider because it speaks to the credibility of Plaintiff's subjective complaints. The ALJ was not unreasonably penalizing Plaintiff for not seeking mental health treatment; rather, he was pointing out that Plaintiff did not consistently treat her depression, casting doubt on the severity of her symptoms as reported to Ms. Ramey. Moreover, the ALJ correctly noted that although Plaintiff had an intake session at Volunteer Behavioral Health following the evaluation with Ms. Ramey, Plaintiff missed all of her follow-up appointments. I **FIND** it was reasonable for the ALJ to consider the absence of other mental health treatment in the record when reviewing Ms. Ramey's opinion and to rely upon that absence as a justification for discounting Ms. Ramey's opinion.

As such, I **CONCLUDE** the ALJ's decision to give Ms. Ramey's opinion less weight is supported by substantial evidence and I further **CONCLUDE** the ALJ's RFC determination is supported by substantial evidence. Although there is evidence in the record to indicate more severe limitations than those outlined in the RFC (i.e., Ms. Ramey's opinion), the ALJ provided justification for rejecting those more restrictive limitations and reasonably found the restrictions outlined in Dr. Calway-Fagen's opinion to be more consistent with the limited mental health evidence in the record. Accordingly, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[3]

    (1)    Plaintiff's motion for judgment on the pleadings [Doc. 16] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).